```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/31/2022
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

KATHLEEN BOFFOLI,

                                                    Plaintiff,                                          20-CV-05317 (SN)

                           -against-                                                 **OPINION & ORDER**

COMMISSIONER OF SOCIAL SECURITY,

                                                Defendant.

-----------------------------------------------------------------X

**SARAH NETBURN, United States Magistrate Judge:**

      Plaintiff Kathleen Boffoli seeks judicial review of the determination of the Commissioner of Social Security (the "Commissioner") that she was not entitled to Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. See 42 U.S.C. § 405(g). The parties have cross-moved for judgment on the pleadings. The Commissioner's motion is GRANTED, and the Plaintiff's motion is DENIED.

BACKGROUND

**I.      Factual Background**

      Boffoli was born on December 2, 1954. ECF No. 15; Administrative Record ("R.") 25. At the time of the hearing, she lived with her husband, a school bus driver, in an apartment. Id. at 47. Boffoli is a high school graduate and previously worked as a clinical assistant at a pediatric home health care office. Id. at 181, 196–97. She stopped working on January 13, 2016, after her 28-year-old son died of a drug overdose. Id. at 309. The Court further adopts the Commissioner's recitation of Boffoli's medical and non-medical record evidence. See ECF No. 26 Memorandum of Law re: Cross Motion for Judgment on the Pleadings ("Def. Br.") at 2–13.

**II.     Administrative Proceedings**

Boffoli applied for DIB on March 13, 2017. R. 158. She listed depression, anxiety, hypertension and grief as the medical conditions limiting her ability to work. Id. at 180. After her application was denied, Boffoli requested a hearing before an ALJ. Id. at 81. She appeared for a hearing before ALJ Michael J. Stracchini on January 29, 2019, and the ALJ issued an unfavorable decision on March 26, 2019. Id. at 15, 27.

At the first step, the ALJ determined that Boffoli had not engaged in substantial gainful activity since January 13, 2016, noting that her wages of $9,660 in 2016 were severance and unused vacation pay. Id. at 17. At the second step, the ALJ held that Boffoli suffered from the severe impairments of depression, post-traumatic stress disorder (PTSD), and irritable bowel syndrome ("IBS"). Id. The ALJ added that Boffoli had also been treated for hypertension but had not alleged any related limitations and concluded that the impairment was non-severe. Id. at 18.

At the third step, the ALJ determined that the severity of Boffoli's impairments did not meet or medically equal the criteria of Listings 5.06, 12.04 and 12.15. Boffoli's diagnosis of IBS did not meet the requirements of Listing 5.06 (Inflammatory Bowel Disease) because the condition did not result in obstructions of the small intestine or colon, severe anemia, serum albumin levels of 3.0g/dl, clinically documented tender abdominal mass palpale on physical examination with abdominal pain or cramping, perineal disease with a draining abscess or fistula, involuntary weight loss, or a need for supplementary daily enteral nutrition. Id. In considering whether Listings 12.04 (Depressive, Bipolar, and Related Disorders) and 12.15 (Trauma and Stressor Related Disorders) applied, the ALJ examined whether Boffoli satisfied the "paragraph B" criteria. Id. The ALJ concluded that she had no limitations in understanding, remembering, or applying information; mild limitations in interacting with others; moderate

2

limitations in concentrating, persisting, or maintaining pace; and moderate limitations in her ability to adapt or manage herself. Id. at 18–19. Because Boffoli's mental impairments did not cause at least two "marked" limitations or one "extreme" limitation, the "paragraph B" criteria were not satisfied. In addition, the evidence did not establish the presence of the "paragraph C" criteria. Accordingly, the ALJ concluded that Boffoli did not meet a Listing-level impairment. Id. at 19.

Before reaching step four, the ALJ made a finding regarding Boffoli's residual functional capacity ("RFC") based on the relevant medical and other evidence in the record. See 20 C.F.R. § 404.1529. The ALJ found that she had the RFC "to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant should be permitted ready access to a bathroom permitting her to be off-task five percent of the workday in addition to regularly scheduled breaks of 15 minutes in the morning, evening, and 30 minutes to one hour in the mid-day." R. 20. Furthermore, the ALJ limited Boffoli to understanding, remembering, and carrying out simple routine tasks with regularly scheduled breaks in a low-stress job, defined as a position with "decision-making and changes in a work setting related to simple routine tasks." Id.

Concerning the opinion evidence, the ALJ accorded great weight to the opinions of consultative examiner Trevor Litchmore, M.D., and state-agency medical consultant A. Holmberg, that Boffoli had no limitations because they were "generally consistent with the treatment record showing conservative treatment without any referral to a specialist and unremarkable physical examination." Id. at 22. Similarly, the ALJ gave great weight to state-agency psychological consultant, M. Marks, Ph.D., who found that despite "some difficulty understanding instructions with a high degree of complexity," "some distractibility," and "some

trouble coping with stress," Boffoli appeared capable of understanding both simple and detailed instructions, sustaining a normal day and work week, interacting with co-workers, supervisors, and the public appropriately, and dealing with minor changes in an ordinary work setting. Id. at 23. However, the ALJ afforded "less weight" to Dr. Lichtmore's opinion that Boffoli had limitations "as it relates to activities that require moderate to severe action" because this opinion was not consistent with "unremarkable physical examinations in the record." Id. at 22.

The ALJ afforded less weight to the opinions of consultative examiner Melissa Antiaris, Psy.D., treating physician Peter Strassberg, M.D., and treating therapist Judith Kiss, DCSW. Although the ALJ gave great weight to parts of Dr. Antiaris's opinion as consistent with Boffoli's conservative mental health treatment, he gave "lesser weight" to her opinion that Boffoli had "marked limitations in her ability to regulate emotions, control behavior, and maintain well-being," reasoning that this opinion was inconsistent with "mental examinations showing the claimant to be cooperative, relating adequately to others, and [exhibiting] good insight and judgment." Id. at 23. The ALJ acknowledged that the opinions of treating physicians like Dr. Strassberg are generally given controlling weight, but concluded that his opinion was "not well-supported and consistent with other substantial evidence in the record, including his own treating notes." Id. at 24. Similarly, the ALJ concluded that Kiss's opinion was entitled to little weight because it was not supported by mental status examinations in the record, plaintiff's conservative mental health treatment, and her daily activities, "including driving locally, preparing simple meals, performing household chores, and spending time with friends and family." Id.

At step four, the ALJ held that Boffoli was unable to perform any past relevant work. See 20 C.F.R. § 404.1565. At the final step, the ALJ determined that she could perform work that

exists in significant numbers in the national economy, including a retail stock, linen room attendant, and kitchen helper. See id. §§ 404.2569, 404.1569(a). As such, he concluded that Boffoli was not disabled, as defined in the Social Security Act, from January 13, 2016, through the date of decision. R. 26.

The Appeals Council denied Boffoli's request for review on May 6, 2020, making the ALJ's decision final. R. 1, 5.

### III.  Boffoli's Civil Case

Boffoli filed her Complaint on July 10, 2020. ECF No. 1. She requested that the Court set aside the decision and grant her DIB benefits, or, alternately, remand the case for further proceedings, along with awarding attorney's fees and costs. Id. at 2. The Commissioner answered by filing the administrative record, and the parties cross-moved for judgment on the pleadings. ECF Nos. 15, 17, 25.

## LEGAL STANDARD

### I.  Standard of Review

In reviewing a decision of the Commissioner, a court may "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). An ALJ's determination may be set aside only if it is based upon legal error or it is not supported by substantial evidence. Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999) (quoting Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998)).

"Substantial evidence is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). The

Commissioner's findings as to any fact supported by substantial evidence are conclusive. Diaz v. Shalala, 59 F.3d 307, 312 (2d Cir. 1995); see also Alston v. Sullivan, 904 F.2d 122, 126 (2d Cir. 1990) ("Where there is substantial evidence to support either position, the determination is one to be made by the factfinder."). Therefore, if substantial evidence supports the ALJ's final decision, the Court must grant judgment in favor of the Commissioner, even if substantial evidence also supports the plaintiff's position. See Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) ("The substantial evidence standard means once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would *have to conclude otherwise*.") (emphasis in original) (citations and internal quotation marks omitted). Although deferential to an ALJ's findings, a disability determination must be reversed or remanded if it contains legal error or is not supported by "substantial evidence." See Rosa, 168 F.3d at 77.

## II.    Definition of Disability

A claimant is disabled under the Act if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).  A "physical or mental impairment" is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." Id. § 1382c(a)(3)(D). A claimant will be found to be disabled only if her "impairments are of such severity that she is not only unable to do his previous work but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." Id. § 1382c(a)(3)(B).

An ALJ must proceed through a five-step process to make a disability determination. See 20 C.F.R. § 416.920(a)(4). The steps are followed in order; if it is determined that the claimant is or is not disabled at a step of the evaluation process, the evaluation will not progress to the next step. The Court of Appeals has described the process as follows:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. Where the claimant is not, the Commissioner next considers whether the claimant has a "severe impairment" that significantly limits her physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment that is listed in 20 C.F.R. pt. 404, subpt. P, app. 1. . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, she has the residual functional capacity to perform her past work. Finally, if the claimant is unable to perform her past work, the burden then shifts to the Commissioner to determine whether there is other work which the claimant could perform.

Jasinski v. Barnhart, 341 F.3d 182, 183–84 (2d Cir. 2003) (quoting Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1999)).

A claimant bears the burden of proof at steps one, two, three, and four; the Commissioner bears the burden at step five. Selian v. Astrue, 708 F.3d 409, 418 (2d Cir. 2013) (citation omitted).

The regulations provide additional guidance for evaluating mental impairments. 20 C.F.R. § 416.920a. This "complex and highly individualized process" focuses the ALJ's inquiry on determining how the impairment "interferes with [the claimant's] ability to function independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. § 416.920a(c)(1), (2). For mental disorders, a claimant must show in part that she has at least two of the so-called "paragraph B criteria" or the "paragraph C criteria." The paragraph B criteria require a showing of extreme limitation of one, or marked limitation of two, of the following areas of mental functioning: (1) understanding, remembering, or applying information; (2) interacting with

others; (3) maintaining concentration, persistence, or pace; or (4) adapting or managing oneself. 20 C.F.R. Pt. 404, subpt. P, app'x 1 § 12.04(B). The degree of limitation in these areas is ranked on a "five-point scale": none, mild, moderate, marked, or extreme. 20 C.F.R. § 416.920a(c)(4). A "marked" limitation signifies that the claimant's "functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited." 20 C.F.R. Pt. 404, subpt. P, app'x 1 § 12.00(F)(2)(d). The paragraph C criteria requires: (1) a medically documented history of the existence of the disorder over a period of at least two years; (2) evidence of medical treatment, mental health therapy, psychosocial support, or a highly structured setting that is ongoing and that diminishes the symptoms and signs of the claimant's mental disorder; or (3) a showing of marginal adjustment, *i.e.* that the claimant has minimal capacity to adapt to changes in her environment or to demands that are not already part of her daily life. 20 C.F.R. Pt. 404, subpt. P, app'x 1 § 12.04(C).

## ANALYSIS

Boffoli contends that that ALJ's RFC determination is not supported by substantial evidence because he failed to properly weigh the medical opinions of Dr. Strassberg, Dr. Antiaris, Kiss, and Dr. Litchmore. ECF No. 18 Memorandum of Law in Support re: Motion for Judgment on the Pleadings ("Pl. Br.") at 1. The Commissioner responds that the ALJ properly weighed the opinion evidence, and there is substantial evidence to support his determination that Boffoli's "impairments, while severe, did not prevent her from performing simple, unskilled, routine, low-stress work." Def. Br. at 1.

I.  Legal Error

   A. Treating Physician Rule

   1. Legal Standard

The "treating physician rule" instructs the ALJ to give controlling weight to the opinions of a claimant's treating physician if the opinion is well-supported by medical findings and is not inconsistent with the other evidence in the record. 20 C.F.R. § 404.1527(c)(2). Affording a treating physician's opinion controlling weight reflects the reasoned judgment that treating physicians are "most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." Id.; see also Petrie v. Astrue, 412 F. App'x 401, 405 (2d Cir. 2011); Mongeur v. Heckler, 722 F.2d 1033, 1039 n.2 (2d Cir. 1983) (*per curiam*); Mejia v. Barnhart, 261 F. Supp. 2d 142, 148 (E.D.N.Y. 2003) ("[A]s the report of a primary treatment provider, [the psychotherapist's] report should have been accorded more than 'little' weight." (citations omitted)). Although the treating physician rule does not apply to new social security claims, it continues to apply to claims filed before March 27, 2017. See 20 C.F.R. § 404.1520c; 20 C.F.R. § 404.1527. Licensed clinical social workers are not "acceptable medical sources" due controlling weight under the treating physician rule, but they are still "important" "other sources" to whom the ALJ should look to show the severity of a claimant's impairments or ability to work. See Diaz, 59 F.3d at 313.

Where mental health treatment is at issue, the treating physician rule takes on added importance. A mental health patient may have good days and bad days; she may respond to different stressors that are not always active. Thus, the longitudinal relationship between a

mental health patient and her treating physician provides the physician with a rich and nuanced understanding of the patient's health that cannot be readily achieved by a single consultative examination. See Canales v. Comm'r of Soc. Sec., 698 F. Supp. 2d 335, 342 (E.D.N.Y. 2010) ("Because mental disabilities are difficult to diagnose without subjective, in-person examination, the treating physician rule is particularly important in the context of mental health." (citing Richardson v. Astrue, No. 09-cv-1841 (SAS), 2009 WL 4793994, at *7 (S.D.N.Y. Dec. 14, 2009))).

The ALJ can discount a treating physician's opinion, however, if the ALJ believes that it "lacks support or is internally inconsistent." Duncan v. Astrue, No. 09-cv-4462 (KAM), 2011 WL 1748549, at *20 (E.D.N.Y. May 6, 2011). "When other substantial evidence in the record conflicts with the treating physician's opinion, [] that opinion will not be deemed controlling. And the less consistent that opinion is with the record as a whole, the less weight it will be given." Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999). If the ALJ decides that the treating physician's opinion is not entitled to controlling weight, he must decide how much weight it should be afforded, considering: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the evidence that supports the treating physician's report; (4) how consistent the treating physician's opinion is with the record as a whole; (5) the specialization of the physician in contrast to the condition being treated; and (6) any other significant factors. 20 C.F.R. § 404.1527(c)(2)–(6); Estrella v. Berryhill, 925 F.3d 90, 95–96 (2d Cir. 2019).

When the ALJ discredits the opinion of a treating physician, the regulations direct him to "always give good reasons in [the] notice of determination or decision for the weight [given a] treating source's opinion." 20 C.F.R. § 404.1527(c)(2); Snell, 177 F.3d at 133. He need not recite

every piece of evidence in relation to these factors, however, so long as "the evidence of record permits [the Court] to glean the rationale of an ALJ's decision." Mongeur, 722 F.2d at 1040; see Martinez-Paulino v. Astrue, No. 11-cv-5485 (RPP), 2012 WL 3564140, at *16 (S.D.N.Y. Aug. 20, 2012) ("It is not necessary that the ALJ recite each factor explicitly, only that the decision reflects application of the substance of the rule."). Although an ALJ's failure to explicitly apply the factors is a procedural error and may be grounds for remand, if the Court determines upon "a searching review of the record" that "the substance of the treating physician rule was not traversed," affirmance is appropriate. Estrella, 925 F.3d at 96 (quoting Halloran, 362 F.3d at 32–33).

   2. Analysis

Boffoli argues that the ALJ failed to properly weigh the opinion of Dr. Strassberg, her treating physician. On January 17, 2019, Dr. Strassberg completed an assessment of Boffoli's ability to perform work related activites. R. 311–12. He assessed her ability to perform the following work-related skills as "fair": follow work rules, relate to co-workers, deal with the public, use judgment, interact with supervisor(s), function independently, understand, remember and carry out complex job instructions, behave in an emotionally stable manner, relate predictably in social situations, and demonstrate reliability. Id. In contrast, he opined that her ability to deal with work stresses, maintain attention and concentration, understand, remember and carry out detailed but not complex job instructions, and understand, remember and carry out simple job instructions, was "poor," meaning that she had "no useful ability to function in this area." Id. He assessed her ability to maintain her personal appearane as "good." Id. at 312. When asked to detail the "medical/clinical findings that support this assessment," he explained that

Boffoli had been "markedly depressed since [the] tragic death of her son in 2015" and was "unable to work due to severe stress." Id. at 311.

The ALJ considered Dr. Strassberg's opinions under the regulations governing cases filed before March 27, 2017. Id. at 23; see also 20 C.F.R. § 404.1527. Although the ALJ acknowledged that generally "more weight is afforded to the opinion of a treating source as [he] is most often in the best position to provide a detailed, longitudinal picture of the claimant's medical impairments," he concluded that Dr. Strassberg's opinion was not entitled to controlling weight and gave it "little weight as it is not well supported and consistent with the other substantial evidence in the record, including his own treating notes." R. 24. He specifically cited to three treatment notes in support of his conclusion: a mental status examination from April 2016 in which Dr. Strassberg found that Boffoli demonstrated "good judgment, normal mood and affect, intact orientation, [and] normal recent and remote memory"; a visit from May 2017, when Dr. Strassberg noted that Boffoli's "symptoms were helped somewhat with medication, and she was slowly doing better"; and a follow-up visit in November 2018 when Dr. Strassberg assessed that that she was doing "reasonably well." Id.

Boffoli argues that the ALJ should have given greater weight to Dr. Strassberg's opinion. She notes the long duration of her treating relationship with him, asserts that his treatment notes in fact supported his opinion and contends that the ALJ effectively "cherry-picked" treating notes that supported his own view while ignoring those that did not. Pl. Br. at 7–9.

While the ALJ may not "inappropriately credit[] evidence that supports administrative conclusions while disregarding differing evidence from the same source," Artinian v. Berryhill, No. 16-cv-4404 (ADS), 2018 WL 401186, at *8 (E.D.N.Y. Jan. 12, 2018), he is not required to afford controlling weight to the treating physician's opinion where the "medical source statement

conflicted with [the physician's] own treatment notes," Chichocki v. Astrue, 534 F. App'x 71, 75 (2d Cir. 2013); see also Colbert v. Comm'r of Soc. Sec., 313 F. Supp. 3d 562, 574 (S.D.N.Y. 2018). The ALJ correctly determined that Dr. Strassberg's opinion was not substantiated by his treatment notes, which indicate that Boffoli's symptoms were responsive to medication and gradually improved over time.

Furthermore, Boffoli's claim that the ALJ disregarded "hundreds of pages of medical evidence in favor of a handful of treatment notes," Pl. Br. at 8, mischaracterizes the record. In fact, the record only contains treatment notes from four appointments with Dr. Strassberg during the relevant period. At the first appointment in April 2016, Dr. Strassberg wrote that Boffoli was understandably "quite depressed" after her son's death and, at her request, prescribed a daily dose of 50 mg of Zoloft. R. 252, 254. In his mental status examination, he noted that she demonstrated "good judgment," "normal mood and affect," full orientation, and normal recent and remote memory. Id. at 253. At the next documented appointment on May 25, 2017, Boffoli reported experiencing depression and anxiety and scored a three out of six on the PHQ-2 mental health questionnaire, but Dr. Strassberg similarly described her insight as good, her mood as normal, her affect as active and alert, and her remote and recent memory as normal. Id. at 324–25. She did not report any hallucinations or suicidal thoughts. Id. at 324. Although he acknowledged her "obvious signs of depression," he wrote that she was "slowly doing okay" and taking anti-depressants "with some limited success." Id. at 324–25. Nearly a year later, Boffoli returned to Dr. Strassberg, reporting continued symptoms of depression and sleep disturbances. Id. at 320. She believed that her antidepressant dosage was insufficient and asked Dr. Strassberg to increase it. Id. Noting her "minimally depressed mood," Dr. Strassberg agreed to increase her dosage to 125 mg. Id. at 320–21. However, Boffoli did not report any anxiety, hallucinations, or

suicidal thoughts, and Dr. Strassberg's mental status examination notes were otherwise consistent with the two prior appointments. Id. At Boffoli's six-month follow-up appointment in November 2018, Dr. Strassberg wrote that she was doing "reasonably well" on the higher dosage and her judgment appeared good, her mood was normal, her affect active and alert, and her recent and remote memory was normal. Id. at 317. Boffoli indicated that she continued to suffer from depression, but reported no sleep disturbances, anxiety, hallucinations, or suicidal thoughts. Id. at 316.

As such, the ALJ's citations to treatment notes do not constitute impermissible cherry-picking but rather correctly characterize the notes as indicating that Boffoli's condition improved gradually in response to conservative treatment. Colbert, 313 F. Supp. 3d at 576. And while these notes substantiate Boffoli's report of prolonged depression and bereavement following the death of her son, they do not suggest that she was unable to function in a work setting because of an inability to cope with stress, maintain concentration, or follow instructions. Instead, her unremarkable mental status examinations indicate that, despite her depression, she retained her judgment, her recent and remote memory, and her ability to appropriately relate to others.

Boffoli also argues that the Commissioner erred in affording little weight to Kiss's opinion. Kiss opined that Boffoli's ability to understand, remember, and carry out complex and detailed job instructions was "poor," but otherwise assessed her abilities as "fair," *i.e.* "seriously limited, but not precluded." R. 313–14. Kiss also stated that while Zoloft was successful in treating Boffoli's anxiety, Boffoli's "depression persists in interfering with her ability to consistently function" and "[s]he has varying motivation and fatigue due to her mental health issues which would make it extremely difficult for her to get or keep a job." Id. at 310. The ALJ

14

discounted this opinion as inconsistent with mental status examinations in the record, Boffoli's conservative mental health treatment, and her activities of daily living. Id. at 24.

Kiss is a licensed clinical social worker and so is not considered an acceptable medical source under the governing regulations. See 20 C.F.R. § 404.1527(f). "While an 'other source' opinion generally is not treated with the same deference as a treating physician's opinion, consideration of an opinion from someone who is not an 'acceptable medical source' is particularly important where that provider is the 'sole source that had a regular treatment relationship with plaintiff.'" Trumpower v. Colvin, No. 6:13-cv-6661 (MAT), 2015 WL 162991, at *18 (W.D.N.Y. Jan. 13, 2015) (quoting White v. Comm'r of Soc. Sec., 302 F. Supp. 2d 170, 176 (W.D.N.Y. 2004)). Kiss saw Boffoli on almost a weekly basis from May 2016 through February 2019 and as such was the sole source with a regular treatment relationship. R. 341–435. Moreover, her treatment notes extensively document Boffoli's struggle with grief and depression, arguably providing sufficient support for her medical opinion. Id. However, even if the ALJ had granted Kiss's medical opinion controlling weight, this would not have changed the outcome because Kiss generally assessed Boffoli's ability to function as "fair." The ALJ adequately accounted for the limitations assessed by Kiss in the RFC by limiting Boffoli to "understanding, remembering, and carrying out simple routine tasks . . . in a low-stress job defined as one that has decision-making and changes in a work setting related to simple routine tasks." Id. at 20. To the extent that Kiss concluded that Boffoli's depression renders her "unable to work," id. at 310, this determination is "reserved to the Commissioner." See 20 C.F.R. § 404.1527 (d)(1); see also Distefano v. Berryhill, 363 F. Supp. 3d 453, 473 (S.D.N.Y. 2019). Therefore, any error in failing to afford proper weight to Kiss's decision is harmless. Walzer v. Chater, No. 93-cv-6240 (LAK), 1995 WL 791963, at *9 (S.D.N.Y. Sept. 26, 1995) (reasoning

15

that failure to discuss treating physician's report was harmless error because it would not have changed the outcome of the ALJ's decision).

Because the ALJ appropriately considered Dr. Strassberg's opinion and provided "good reasons" for declining to afford it controlling weight, and any error in failing to give controlling weight to Kiss's opinion was harmless, the Court concludes that the ALJ "applied the substance of the treating physician rule" and Boffoli is not entitled to remand on this ground. Halloran, 362 F.3d at 32.

**II.     Substantial Evidence**

Boffoli argues that the ALJ's RFC determination is not supported by substantial evidence because he erred in affording little weight to the opinions of consultative examiners Dr. Antiaris and Dr. Litchmore.

Boffoli saw Dr. Antiaris for a psychiatric examination on April 20, 2017. R. 301. Dr. Antiaris assessed no limitation in Boffoli's ability to understand, remember, and apply simple directions and instructions; mild limitation in her ability to understand, remember, and apply complex directions and instructions; no limitations in her ability to use reason and judgment to make work related decisions; mildly limited in her ability to interact adequately with supervisors, co-workers, and the public; mild limitations in her ability to sustain concentration and perform a task at a consistent pace and sustain an ordinary routine and regular attendance at work; no limitations in her ability to maintain personal hygiene or be aware of normal hazards; and a marked limitation in her ability to regulate emotions, control behavior, and maintain well-being. Id. at 303–04. The ALJ gave great weight to most of Dr. Antiaris's opinion "because it is supported by the claimant's conservative mental health treatment and the mental status examinations in the record." Id. at 23. However, he gave lesser weight to Dr. Antiaris's

16

assessment of a "marked limitation" in Boffoli's ability to regulate emotions, control behavior, and maintain well-being, reasoning that this conclusion was inconsistent with mental status examinations that "show the claimant to be cooperative, relating adequately to others, and [possessing] good insight and judgment." Id.

The ALJ did not err in declining to grant great weight to Dr. Antiaris's finding of a marked limitation in Boffoli's ability to regulate emotions, control behavior, and maintain well-being. Arguably, Dr. Antiaris's opinion is consistent with other evidence in the record, namely Kiss's treating notes and Boffoli's testimony at the hearing. However, "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve," Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002), and "the deferential standard of review prevents us from reweighing it," Krull v. Colvin, 669 F. App'x 31, 32 (2d. Cir. 2016). Furthermore, even if the ALJ had given great weight to this assessment, a finding of a "marked" limitation in one area is not sufficient to satisfy the paragraph B criteria.

Similarly, the ALJ's decision to give less weight to Dr. Litchmore's opinion about Boffoli's limitations relating to activities that require moderate to severe exertion was also supported by substantial evidence. Boffoli saw Dr. Litchmore for an internal medicine examination on April 20, 2017. R. 305. Although she reported her history of abdominal pain following her colonoscopy in 2015, the physical examination was unremarkable, and Dr. Litchmore noted that Boffoli's bowel sounds were normal with no abdominal bruits, and her abdomen was soft and nontender with no hepatosplenomegaly or masses. Id. at 307. Although Dr. Litchmore did not identify any physical limitations, he provided that Boffoli had limitations relating to activities that require moderate to severe exertion based on her subjective complaints of recurrent abdominal pain alone. Id. at 308. While the ALJ gave "great weight" to his opinion

that Boffoli had no limitations, he gave "less weight" to his opinion of limitations relating to activities that require moderate to severe exertion as "not consistent with the unremarkable physical examinations in the record." Id. at 22. The ALJ's decision was supported not only by Dr. Litchmore's physical examination but also by the physical examinations performed by Dr. Strassberg, which found no evidence of abnormalities in the abdomen. Id. at 254, 317, 321, 325. Furthermore, Boffoli did not report symptoms of IBS at her physical exams with Dr. Strassberg, and there is no evidence in the record that she sought out medical care for her condition during the relevant period. Id. at 253, 316, 320, 324.

   Ultimately, the ALJ's RFC determination was supported by substantial evidence. The RFC is amply supported by both the examination findings and medical opinions of both Boffoli's treating physician and consultative examiners, who routinely reported unremarkable physical findings and uniformly found her to be cooperative with fair insight and judgment and an appropriate affect. Although Dr. Strassberg and Kiss's treatment notes document Boffoli's struggles with depression and grief, she never reported hallucinations, suicidal ideations, or violent impulses towards others. Cf. Trumpower, 2015 WL 162991 at 15–17 (concluding that ALJ failed to account for the severity of claimant's depression, brought on by the death of her husband, where the record documented multiple instances of crisis intervention in response to suicidal ideation and stated threats to kill her daughter). Instead, the record demonstrates that Dr. Strassberg and Kiss continued to administer a conservative treatment regimen of medication and weekly therapy that led to gradual improvement over time. See Selimaj v. Berryhill, No. 17-cv-3389 (KMK), 2019 WL 1417050, at *9 (S.D.N.Y. Mar. 29, 2019) ("Although it is true that an ALJ may not impose her notion that the severity of an impairment directly correlates with the

intrusiveness of the medical treatment ordered, it is evident here that the ALJ considered Plaintiff's treatment collectively with the other evidence in the record." (cleaned up)).

While the Court sympathizes with Boffoli's bereavement, the ALJ properly weighed opinion evidence and the medical evidence in the record in reaching his RFC determination. As such, the RFC determination is supported by substantial evidence, and Boffoli is not entitled to remand on this ground.

## CONCLUSION

The Commissioner's motion is GRANTED (ECF No. 25), the Plaintiff's motion is DENIED (ECF No. 17), and the case is DISMISSED.

**SO ORDERED.**

_____
SARAH NETBURN
United States Magistrate Judge

DATED:    New York, New York
         March 31, 2022